UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

JAIME FRANCISCO GONZALEZ-LOPEZ,  )
                                 )
                 Petitioner,     )
                                 )
        v.                       )    No. 2:26-cv-00200-JRO-MG
                                 )
BRISON SWEARINGEN,               )
MARCOS CHARLES,                  )
MARKWAYNE MULLIN, and            )
TODD BLANCHE,[1]                 )
                                 )
                 Respondents.    )

**ORDER ON PETITION FOR WRIT OF HABEAS CORPUS**

The Immigration and Nationality Act ("INA") not only authorizes but requires the Executive to detain certain aliens without a bond hearing pending decisions on their removability. The main issue in this case is whether the Petitioner, Jaime Francisco Gonzalez-Lopez, falls into the category of aliens subject to mandatory detention. He does under 8 U.S.C. § 1225(b)(2)(A), and his detention does not violate the Fifth Amendment's Due Process Clause. The Court therefore **DENIES** his Petition for Writ of Habeas Corpus. Dkt. [1].

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Markwayne Mullin (as Secretary of the U.S. Department of Homeland Security) and Todd Blanche (as Acting Attorney General of the United States) are automatically substituted for Respondents Kristi Noem and Pam Bondi as parties in this suit.

## I. BACKGROUND

### A.   Factual Background

The following alleged facts are not in dispute and the Court finds that they are true based on its review of the verified Petition, the answers to the Court's Order to Show Cause, and the accompanying documentary evidence.  *See* 28 U.S.C. § 2242; *id.* § 2243 ("The court shall summarily hear and determine the facts . . . ."); *id.* § 2248 ("The allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true . . . .").

Petitioner is a citizen of Mexico.  Dkt. 1 at 7; Dkt. 8 at 3.  On or around June 5, 2021, he entered the United States without inspection and has since been living in Fort Wayne, Indiana.  Dkt. 1 at 7.  In late January 2026, Petitioner was arrested and detained by local law enforcement in Allen County, Indiana, on invasion of privacy charges.  Dkt. 1 at 7; Dkt. 8 at 3; Dkt. 8-1 at 15.  U.S. Immigration and Customs Enforcement ("ICE") officers subsequently placed a detainer on Petitioner and issued an I-200 warrant for his arrest.  Dkt. 8 at 4; Dkt. 8-1 at 6, 15.  On February 9, 2026, ICE officers took Petitioner into custody. Dkt. 8 at 4; Dkt. 8-1 at 14–16.  The Department of Homeland Security also initiated removal proceedings by issuing him a Notice to Appear ("NTA") the same day.  Dkt. 1-3 at 2–6.  The NTA charges state that Petitioner is removable based on 8 U.S.C. § 1182(a)(6)(A)(i) ("An alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place

other than as designated by the Attorney General, is inadmissible.") and 8 U.S.C. § 1182(a)(7)(A)(i)(I) (lack of valid entry documentation). *Id.*

Petitioner's removal proceedings are ongoing. Dkt. 1 at 8. Petitioner requested a bond hearing in immigration court, but on March 12, 2026, the immigration judge denied that request for lack of jurisdiction, citing the Board of Immigration Appeals' ("BIA") decision in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025). Dkt. 1 at 9; Dkt. 1-7 at 2. On March 20, 2026, Petitioner filed an application for asylum and withholding of removal in immigration court. Dkt. 1 at 9; Dkt. 1-10; Dkt. 8 at 5. The immigration judge scheduled his case for a final merits hearing on April 8, 2026. Dkt. 1-8 at 2. Petitioner represents that he asked the immigration judge for more time to prepare for the merits hearing, but that request was denied. Dkt. 1 at 3. At the April 8 hearing, Petitioner was ordered removed. Dkt. 14-1 at 1, 3. He reserved his appeal, and his appeal deadline is May 8, 2026,[2] which has not yet passed. *Id.* at 4.

---

[2] Both parties argue that this case is not moot because the order of removal is not yet administratively final. Dkt. 14 & 16. The Court agrees. A removal order becomes administratively final thirty days after the order is issued, if no appeal is filed, or after the Board of Immigration Appeals affirms the order. 8 U.S.C. § 1231(a)(1)(B); 8 U.S.C. § 1101(a)(47)(B); *see also* 8 C.F.R. § 1003.38(b). Once the order becomes final, Petitioner's detention will be governed by 8 U.S.C. § 1231(a)(2)(A), which states that "[d]uring the removal period, the Attorney General shall detain the alien." *See Johnson v. Guzman Chavez*, 594 U.S. 523, 534 (2021) (noting that the removal and detention period under § 1231 "begins when an alien is 'ordered removed,' and the removal order becomes 'administratively final'"). But here, thirty days have not yet passed after the order of removal was issued, and Petitioner has stated that he is preparing to appeal in any case. *See* Dkt. 16. So the 90-day removal period specified by 8 U.S.C. § 1231(a)(1) has not been triggered, and until then, Petitioner is still being detained under 8 U.S.C. § 1225(b)(2)(A). This Court therefore has jurisdiction to reach the issue.

Petitioner remains in detention at the Clay County Justice Center in Brazil, Indiana.  He filed the instant habeas petition on March 23, 2026.  Dkt. 1.  He names as Respondents Brison Swearingen, Sheriff of the Clay County Jail; Markwayne Mullin, Secretary of the U.S. Department of Homeland Security; Marcos Charles, Acting Director of the Chicago ICE Field Office; and Todd Blanche, Acting Attorney General of the United States.  Dkt. 1 at 3–5.

## B.    Statutory Background

As amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), two statutory provisions principally govern the detention of aliens pending their removal proceedings—8 U.S.C. § 1225 and 8 U.S.C. § 1226.  While Section 1225 mandates detention in all cases, Section 1226 permits the release of some aliens on bond.

Key to Section 1225 is its definition of "applicant for admission."  Section 1225(a)(1) defines an "applicant for admission" as an alien "who arrives in the United States" or who is "present in" the country but "has not been admitted." 8 U.S.C. § 1225(a)(1).  The Supreme Court has explained that "applicants for admission fall into one of two categories"—"those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018).

Section 1225(b)(1) requires the detention and "expedited removal" of certain applicants for admission.  *See Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108–09 (2020).  An applicant is subject to expedited removal if he is "arriving in the United States" and determined  by an immigration officer to be "inadmissible" because of fraud, misrepresentation, or lack of valid entry

4

documentation.  8 U.S.C. § 1225(b)(1)(A)(i).[3]  Upon such determination, the officer "shall order the alien removed from the United States without further hearing or review *unless* the alien indicates either an intention to apply for asylum . . . or a fear of persecution."  *Id.* (emphasis added).  Where an alien claims asylum, the immigration officer "shall refer" the alien to an asylum officer for an interview to determine whether he has a "credible fear of persecution."  *Id.* § 1225(b)(1)(A)(ii), (B)(ii).  Aliens determined to have a credible fear of persecution "shall be detained for further consideration of the application for asylum" in a standard removal hearing.  *Id.* § 1225(b)(1)(B)(ii); *Thuraissigiam*, 591 U.S. at 109 (citing 8 C.F.R. § 208.30(f)).  Aliens determined to lack a credible fear of persecution are subject to expedited removal and shall be detained "until removed."  *Id.* § 1225(b)(1)(B)(ii).

Section 1225(b)(2) "is broader" and "serves as a catchall provision that applies to all applicants for admission not covered by Section 1225(b)(1)."  *Jennings*, 583 U.S. at 287.  With exceptions not relevant here, Section 1225(b)(2)(A) provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall be detained* for a proceeding under section 1229a of this title."  8 U.S.C.

---

[3] "[C]ertain other aliens" are also subject to expedited removal, including any aliens "designated by the Attorney General" who have "not been admitted or paroled into the United States, and who [have] not affirmatively shown, to the satisfaction of an immigration officer, that [they have] been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility" for fraud, misrepresentation, or lack of valid entry documentation.  8 U.S.C. § 1225(b)(1)(A)(iii)(I)–(II).

§ 1225(b)(2)(A) (emphasis added).   In other words, detention is mandatory pending "the usual removal process," which "involves an evidentiary hearing before an immigration judge" where "an alien may attempt to show that he or she should not be removed." *Thuraissigiam*, 591 U.S. at 108.

Section 1226(a), by contrast, more generally provides that, "[o]n a warrant issued by the Attorney General, an alien *may* be arrested and detained pending a decision on whether the alien is to be removed from the United States."   8 U.S.C. § 1226(a) (emphasis added).   Section 1226(a) also permits the Attorney General to release an alien on "bond" or "conditional parole," unless the alien "falls into one of several enumerated categories involving criminal offenses and terrorist activities." *Jennings*, 583 U.S. at 289; *see* 8 U.S.C. § 1226(c)(1)(A)–(E). For those enumerated categories, detention pending removal is also mandatory.

## II. DISCUSSION

Petitioner's core argument for habeas relief is that Respondents have unlawfully subjected him to mandatory detention for the duration of his removal proceedings.  Respondents rely upon 8 U.S.C. § 1225(b)(2)(A) to detain Petitioner without a bond hearing pending removal proceedings because they argue he is an "applicant for admission."   Petitioner contends that 8 U.S.C. § 1226(a) governs his detention and entitles him to a bond determination.  By way of relief, he seeks "an order ordering the Immigration Judge presiding in [his] removal proceeding to conduct a bond determination hearing per § 1226." Dkt. 11 at 4.

Petitioner further claims that Respondents have placed him in "expedited removal proceedings" but failed to provide him a credible fear interview as

6

required by 8 U.S.C. § 1225(b)(1)(A)(ii).  Dkt. 1 at 12.  He also argues that an immigration judge violated his "Sixth Amendment right to effective counsel" and "Fourteenth Amendment right to due process" by not allowing him additional time to prepare for a hearing in his underlying removal proceedings.  Dkt. 13–14.  Finally, Petitioner appears to argue that all of the above amounts to a violation of his Fifth Amendment due process rights.  Ultimately, Petitioner is not entitled to the relief he seeks.[4]

## A.    Petitioner is not in "expedited removal" proceedings.

The Court begins by clarifying that Petitioner is not subject to "expedited removal" under 8 U.S.C. § 1225(b)(1).  Rather—as his experience and NTA make clear—Petitioner is in standard removal proceedings before an immigration judge under 8 U.S.C. § 1229a (or INA Section 240).

As detailed above, Section 1225(b)(1) mandates the detention and "expedited removal" of certain applicants for admission without a hearing in immigration court.  *See* 8 U.S.C. § 1225(b)(1)(a)(i) ("[T]he officer shall order the alien removed from the United States without further hearing or review.").  Applicants subject to expedited removal include, as relevant here, those "arriving in the United States" and determined by an immigration officer to be "inadmissible" because of fraud, misrepresentation, or lack of valid entry documentation.  8 U.S.C. § 1225(b)(1)(A)(i).  Though Petitioner is an "applicant

---

[4] Petitioner argues that the Court should not require exhaustion of administrative remedies in this case. Dkt. 1 at 6.  Respondents do not argue exhaustion in their Returns to the Order to Show Cause, dkts. 8, 10, so the Court does not address the issue.

for admission," *see* Section II.B, *infra*, he is not "arriving in the United States" but has been present in the country without admission since June 2021.  Dkt. 1 at 7.  Section 1225(b)(1) and its expedited removal provisions therefore do not apply to him.

Neither do Section 1225(b)(1)'s related asylum provisions.  Applicants for admission subject to expedited removal who express an intent to apply for asylum or a fear of persecution are administered a "credible fear interview" before being removed from the country "without further hearing or review."  8 U.S.C. § 1225(b)(1)(A)(i)–(ii), (B)(i)–(iii).  And if determined to have a credible fear of persecution, "the applicant will receive 'full consideration' of his asylum claim in a standard removal hearing."  *Thuraissigiam*, 591 U.S. at 109 (quoting 8 C.F.R. § 208.30(f)).

Petitioner has not been administered a "credible fear interview" because he is not and has never been placed in "expedited removal" under Section 1225(b)(1).  Instead, Petitioner's NTA provides that he has been placed in standard removal proceedings under INA Section 240 (8 U.S.C. § 1229a) before an immigration judge.  Dkt. 1-3 at 3.  Far from being ordered removed by an immigration officer "without further hearing or review," Petitioner has been actively litigating his case in immigration court, including by applying for asylum and withholding of removal.  Dkt. 1 at 2.  Those removal proceedings may have proceeded more quickly than Petitioner anticipated, *see* dkt. 1 at 3, but that does not convert them into "expedited removal" proceedings under the INA.

Accordingly, Petitioner's claims, to the extent they are premised on being subject to "expedited removal" under Section 1225(b)(1), are denied. Because Petitioner is not in "expedited removal" proceedings, his related claim that Respondents have violated Section 1225(b)(1)(A)(ii) by failing to provide him a credible fear interview is also denied.

**B.    *Castañon-Nava* does not control this case.**

As a preliminary matter, Respondents and the Petitioner alerted the Court to the Seventh Circuit's recent opinion in *Castañon-Nava v. U.S. Department of Homeland Security*, No. 25-3050, --- F.4th ---, 2026 WL 1223250 (7th Cir. May 5, 2026), *see* dkts. 15 & 16, which includes a fulsome discussion of the Section 1225(b)(2)(A) issue presented in the petition. However, the *Castañon-Nava* opinion confirms that the Seventh Circuit has yet to issue binding precedent resolving the scope of Respondents' mandatory detention authority under Section 1225(b)(2)(A).

In *Castañon-Nava*, the Seventh Circuit addressed allegations that DHS and ICE violated a 2022 Consent Decree addressing the warrantless arrests of aliens pursuant to 8 U.S.C. § 1357(a)(2). The Consent Decree resolved a class-action lawsuit alleging violations of 8 U.S.C. § 1357, brought by a certified class of "[a]ll current and future persons arrested without a warrant for a civil violation of U.S. immigration laws within the area of responsibility of the ICE Chicago Field Office," against DHS, ICE, and various federal officials. *Castañon-Nava*, 2026 WL 1223250, at *2. In the Consent Decree, the defendants agreed "to comply with § 1357(a)(2) when making warrantless arrests and issue a

9

'Broadcast Statement of Policy' affirming 'the underlying laws and policies applicable to all arrests effected under 8 U.S.C. § 1357(a)(2).'" *Id.* at *1. The Consent Decree also had an expiration date of May 12, 2025. *Id.* at *2. One day after the expiration date, the *Castañon-Nava* class alleged that the defendants violated the Consent Decree. *Id.* In relevant part, the district court issued two orders to address the breach. First, it ordered the Consent Decree extended by 118 days. Second, it ordered the defendants to release "13 class members, as well as approximately 200 additional individuals, whose arrests (in the district court's words) 'potentially' violated § 1357(a)(2)." *Id.* at *1.

The defendants moved to stay both orders pending appeal. That motion was granted in part and denied in part in a 2–1 decision. *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048 (7th Cir. 2025). After full briefing and oral argument, a majority of the Seventh Circuit ultimately affirmed in part and denied in part the district court's two orders, with Judge Lee writing the majority opinion and Judge Pryor concurring in part and concurring in the judgment. Between these two opinions, the Seventh Circuit affirmed the district court's first order "extend[ing] the Consent Decree by 118 days" and part of the second order "releas[ing] . . . class members for whom a determination has been made that they were arrested without a warrant in contravention of 8 U.S.C. § 1357(a) and the Consent Decree," but reversed the remainder of the district court's second order "to the extent it requires the release of 'potential class members' and any person who was arrested pursuant to an I-200 warrant (defective or otherwise)." *Castañon-Nava*, 2026 WL 1223250, at *22. Judge Kirsch dissented, concluding

that the Court "should vacate both orders and remand the case to the district court." *Id.* at *39 (Kirsch, J., dissenting).

So far, this has little to do with the case at hand. Here is how a discussion of Section 1225(b)(2)(A) arose in that case. In opposing the district court's second order—that is, the one ordering release of 13 class members, and approximately 200 "potential" class members—the defendants argued, in relevant part, that the district court "restrict[ed] the government's ability to detain noncitizens pursuant to its authority under § 1225(b)(2)(A)[.]" *Id.* at *8. On that argument, however, *Castañon-Nava* is a fractured 1–1–1 opinion.

Judge Lee confronted the defendants' Section 1225(b)(2)(A) argument and disagreed with it, while acknowledging that "his colleagues . . . believe that we should not reach this issue." *Castañon-Nava*, 2026 WL 1223250, at *9–21 (Lee, J.). Judge Pryor concluded that it was not necessary for the Court to "reach[] the merits of the Plaintiffs' argument that the Defendants' interpretation of 8 U.S.C. § 1225(b)(2)(A) is improper," declining to join that portion of Judge Lee's opinion and voting to resolve the case on other grounds. *Id.* at *22 (Pryor, J., concurring in part and concurring in judgment); *see id.* at *25–26. And Judge Kirsch concluded in his dissent that the defendants' reading of Section 1225(b)(2)(A) is correct. *Id.* at *34–38 (Kirsch, J., dissenting). The portion of the merits opinion in *Castañon-Nava* addressing the meaning and applicability of Section 1225(b)(2)(A) is, therefore, not a precedential holding of the Seventh

11

Circuit,[5] and both Judge Lee's and Judge Kirsch's opinions are persuasive authority on this issue. While the reasoning in these opinions does not arise from the procedural posture of this case (i.e., a habeas petition directly challenging the Respondents' application of Section 1225(b)(2)(A) to the petitioner), both warrant serious consideration. The same is true of the many orders from this District that have deferred to Judge Lee's reasoning in the *Castañon-Nava* stay opinion,[6] which mirrors his reasoning in his merits opinion and two other recent opinions from the Second Circuit and Eleventh Circuit. *See Cunha v. Freden,* No. 25-3141-pr, --- F.4th ---, 2026 WL 1146044 (2d Cir. Apr. 28, 2026); *Alvarez v. Warden,* No. 25-14065, --- F.4th ---, 2026 WL 1243395 (11th Cir. May 6, 2026).

---

[5] The Seventh Circuit's discussion of Section 1225(b)(2)(A) in its emergency stay order in *Castañon-Nava,* 161 F.4th 1048, is also not binding precedent. As the merits opinion all but confirms, the stay order's discussion of Section 1225(b)(2)(A) is dicta because it was not essential to the resolution of the stay order or the merits. *See Seminole Tribe of Fla. v. Florida,* 517 U.S. 44, 66–67 (1996) ("When an opinion issues for the Court, it is not only the result but also those portions of the opinion necessary to that result by which we are bound."). Further, decisions from motions panels at the stay stage, even those directly on point, are "not entitled to the weight of a decision made after plenary submission" because they are "summary in character" and "made often on a scanty record." *Johnson v. Burken,* 930 F.2d 1202, 1205 (7th Cir. 1991).

[6] *See, e.g., Alejandro v. Olson,* --- F. Supp. 3d ---, No. 1:25-cv-02027-JPH-MKK, 2025 WL 2896348, at *7 (S.D. Ind. Oct. 11, 2025) ("The phrase 'seeking admission,' . . . means that a noncitizen must be actively 'seeking' 'lawful entry.'" (internal citation omitted)); *Campos Leon v. Forestal,* No. 1:25-cv-01774-SEB-MJD, 2025 WL 2694763, at *3 (S.D. Ind. Sep. 22, 2025) ("Meanwhile, the respondents' contention that Mr. Campos Leon's detention is mandatory under § 1225(b)(2) is, at best, incomplete. Assuming for the sake of argument that Mr. Campos Leon is an 'applicant for admission,' the respondents has not explained how he is 'seeking admission' such that § 1225(b)(2) applies."). Opinions of other judges in this District do not bind this Court. *Trump v. CASA, Inc.,* 606 U.S. 831, 858 n.17 (2025) (citation omitted) ("[D]istrict court opinions lack precedential force even vis-à-vis other judges in the same judicial district.").

12

Respectfully, and for the reasons explained below and in this Court's prior orders, *e.g., Demir v. Noem,* No. 2:26-cv-00086-JRO-MKK, 2026 WL 706485, at *4 (S.D. Ind. Mar. 13, 2026), this Court reads Section 1225(b)(2)(A) in line with Judge Kirsch's merits opinion in *Castañon-Nava,* which is consistent with the reasoning of the Fifth and Eighth Circuits addressing the precise issue on the merits in habeas actions. *Buenrostro-Mendez v. Bondi,* 166 F.4th 494 (5th Cir. 2026); *Avila v. Bondi,* 170 F.4th 1128 (8th Cir. 2026).[7]

## C.    Petitioner is not entitled to a bond hearing because Section 1225(b)(2)(A) mandates his detention pending removal proceedings.

Section 1225(b)(2)(A)'s plain terms require Petitioner's detention pending his removal proceedings. When engaging in statutory interpretation, the Court "start[s] with the text of the statute to ascertain its plain meaning." *United States v. Melvin,* 948 F.3d 848, 851 (7th Cir. 2020) (internal quotation and citation omitted). In determining a statute's plain meaning, the Court is guided by the statutory language at issue and the language and design of the statute as a whole. *Id.* at 852. Unless specifically defined, a statute's words are given their "ordinary, contemporary, and common meaning by looking at what they meant when the statute was enacted . . . ." *Id.*

---

[7] *See also Rayo v. Olson,* No. 2:25-cv-2064-BHL, 2026 WL 594079 (E.D. Wis. Mar. 3, 2026); *Hernandez v. Olson,* No. 2:25-cv-1670-BHL, 2026 WL 161509 (E.D. Wis. Jan. 21, 2026); *Rodriguez v. Olson,* 814 F. Supp. 3d 945 (N.D. Ill. 2026) (Pacold, J.); *Ugarte-Arenas v. Olson,* No. 2:25-cv-1721-WCG, 2025 WL 3514451 (E.D. Wis. Dec. 8, 2025), *appeal docketed,* No. 26-1023 (7th Cir. Jan. 7, 2026); *Rojas v. Olson,* No. 2:25-cv-1437-BHL, 2025 WL 3033967 (E.D. Wis. Oct. 30, 2025), *appeal docketed,* No. 25-3127 (7th Cir. Nov. 25, 2025).

To start, Petitioner is an "applicant for admission." The term is expressly defined in the statute as follows: "An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival . . .) shall be deemed . . . an applicant for admission." 8 U.S.C. § 1225(a)(1). While the definition of "applicant for admission" does encompass aliens who may have recently arrived at a port of entry or crossed the border, that definition is broader. "[A]pplicant for admission" includes any unadmitted alien present in the United States no matter when they entered or how long they have been here. *See Buenrostro-Mendez v. Bondi,* 166 F.4th 494, 502 (5th Cir. 2026) ("Presence without admission deems the petitioners to be applicants for admission."). There is no dispute that Petitioner is an alien who is present in the United States and has not been admitted. He is therefore deemed an "applicant for admission" under the statute.

As noted above, the detention of applicants for admission falls into one of two statutory categories—Section 1225(b)(1) or the "catchall" Section 1225(b)(2). *Jennings,* 583 U.S. at 287. The Court has established that Section 1225(b)(1) does not apply to Petitioner. *See* Section II.A, *supra.* Section 1225(b)(2)(A) requires the detention of applicants for admission pending removal proceedings "if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted." Petitioner makes no argument that he is "clearly and beyond a doubt entitled to be admitted" to the country. Thus, Section 1225(b)(2)(A) mandates his detention pending removal proceedings. *See Matter of Yajure Hurtado,* 29 I. & N. Dec. 216, 220, 229 (BIA

2025) (holding that immigration judge "lacked authority to hear" alien's bond request "because aliens who are present in the United States without admission are applicants for admission as defined under . . . 8 U.S.C. § 1225(b)(2)(A), and must be detained for the duration of their removal proceedings").

Petitioner raises several arguments rejecting this straightforward application of Section 1225. The Court does not find these arguments persuasive.

### 1. "Seeking Admission"

First, Petitioner argues that the Court is "bound by" certain judicial decisions that have found Section 1225(b)(2)(A)'s "seeking admission" language limits its applicability to aliens who, unlike himself, affirmatively seek lawful entry at the country's borders. Dkt. 11 at 3–4. The Court disagrees.

As explained above, no binding precedent requires this Court to adopt Petitioner's interpretation of Section 1225(b)(2)(A). *See* Section II.B & nn. 5 & 6, *supra.* This Court has previously determined that the statutory language and context confirm that there is no separate and independent "seeking admission" element to Section 1225(b)(2)(A). *See Demir*, 2026 WL 706485, at *4; *Singh v. Swearingen*, No. 2:26-cv-00167-JRO-MG, 2026 WL 847715, at *5 (S.D. Ind. Mar. 27, 2026). Read most plainly, the term "seeking admission" is simply a synonym for applying for admission. And applying for admission is a participial form of the noun "applicant for admission." *See Buenrostro-Mendez*, 166 F.4th at 502 ("The everyday meaning of the statute's terms confirms that being an 'applicant for admission' is not a condition independent from 'seeking admission.'"); *Avila*,

15

170 F.4th at 1134 ("When a person applies for something, they are necessarily seeking it." (cleaned up)).

This plain language reading that *all* "applicant[s] for admission" are, by definition, "seeking admission" does not render superfluous the words "seeking admission" in Section 1225(b)(2)(A). Rather, because "applicant for admission" is expressly defined in the statute, it is best understood to qualify the broader meaning of "seeking admission." *Cf. United States v. Woodward*, 376 F.2d 136, 141 (7th Cir. 1967) (holding statutory terms "'alarm or disturb' . . . qualify the broader meaning of 'breach of the peace'" and are not superfluous). This makes sense, as one can also "seek[] admission" even when he is not at a port of entry or present in the United States. *Matter of Lemus-Losa*, 25 I. & N. Dec. 734, 741 (BIA 2012) (noting, for example, "an alien can 'again seek[] admission' . . . by applying for a visa at a consulate abroad").

Indeed, other provisions in Section 1225 demonstrate that all "applicant[s] for admission" are "seeking admission," not just those who recently arrived. Take Section 1225(a)(3), which provides that "[a]ll aliens . . . who are applicants for admission *or otherwise* seeking admission . . . shall be inspected by immigration officers." The provision's use of "or otherwise" indicates that "'applicants for admission' are a subset of those 'seeking admission.'" *Buenrostro-Mendez*, 166 F.4th at 503; *see also Avila*, 170 F.4th at 1135 n.4. Consider too Section 1225(a)(5): "An applicant for admission may be required to state under oath any information sought by an immigration officer regarding the purposes and intentions of the applicant in seeking admission to the United

16

States . . . ." (emphasis added).  Notably, the provision refers to the purposes and intentions of "the *applicant* in seeking admission"—not "the arriving alien in seeking admission."   In other words, all "applicant[s] for admission" are necessarily "seeking admission," regardless of when they arrive.

What's more, Congress knew how to say "arriving alien" when it wanted to in Section 1225.  It did not need to qualify "applicant for admission" with a separate and independent "seeking admission" requirement to achieve that effect.  For example, Section 1225(b)(1)(A) explicitly limits its applicability to (1) "an alien . . . who is arriving," and (2) certain other unadmitted aliens who do not have two years of continuous physical presence in the United States.  Tellingly, Section 1225(b)(2)(A) contains no such temporal limitation.  *See Negrete Ramirez v. Noem*, No. 1:25-cv-00206-CMS, 2026 WL 251725, at *3 (E.D. Mo. Jan. 30, 2026) ("If Congress intended that an alien no longer is 'seeking admission' after some amount of time in the United States, it could have said so.").

Petitioner may find it strange that he could be "seeking admission" if he is already in the United States.  But that is a feature of Section 1225, not a bug.  The INA defines "admission" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer."  8 U.S.C. § 1101(a)(13)(A).  Petitioner never effected a *lawful* entry into the country.  He was not admitted.  In the eyes of the INA, he remains an "applicant for admission" knocking on the proverbial door—that is, "seeking admission."  This is not a

novel or even recent understanding of our immigration laws.  In 2012, the Board

of Immigration Appeals explained:

> In ordinary parlance, the phrase "seeks admission" connotes a request for *permission* to enter . . . .  The problem, however, is that Congress has defined the concept of an "applicant for admission" in an unconventional sense, to include not just those who are expressly seeking permission to enter, but also those who are present in this country without having formally requested or received such permission, or who have been brought in against their will under certain circumstances. . . . In other words, many people who are not *actually* requesting permission to enter the United States in the ordinary sense are nevertheless deemed to be "seeking admission" under the immigration laws.

*Matter of Lemus-Losa*, 25 I. & N. Dec. at 743 (emphasis in original).  Thus, the

term "seeking admission" does not create an independent pre-requisite for

mandatory detention under Section 1225(b)(2)(A).

    **2.    "Arriving Aliens"**

Second, Petitioner argues he is not subject to mandatory detention

because, broadly speaking, Section 1225 applies to "arriving aliens with

insufficient ties to the community." Dkt. 11 at 3.  Petitioner, by contrast, is not

an "arriving alien," as he has been in the country since June 2021.  *Accord*

*Mohammed v. Olson,* No. 1:25-cv-02404-TWP-MKK, 2025 WL 3541819, at *4

(S.D. Ind. Dec. 10, 2025) ("Considering § 1225 as a whole demonstrates that the

most natural meaning of § 1225 is that it applies to 'arriving' noncitizens

attempting to enter the United States.").

General characterizations of a statute's overall purpose, however, cannot substitute for its specific and plain words. *See Kloeckner v. Solis*, 568 U.S. 41, 55 n.4 (2012) ("[E]ven the most formidable argument concerning the statute's purposes could not overcome the clarity . . . in the statute's text."). As this Court discussed in a prior Order, Section 1225 concerns "applicant[s] for admission," which is a clearly defined term that includes but is not restricted only to arriving aliens or other recent border crossers. *Demir*, 2026 WL 706485, at *5.

The Supreme Court did not hold otherwise in *Jennings v. Rodriguez*. That decision repeatedly stated that it was summarizing Sections 1225 and 1226 in "general" terms. *See Jennings*, 583 U.S. at 287 ("That process of decision *generally* begins at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible." (emphasis added)); *id.* at 288 ("Section 1226 *generally* governs the process of arresting and detaining [aliens inside the United States] pending their removal." (emphasis added)). *Accord Buenrostro-Mendez,* 166 F.4th at 505; *Avila,* 170 F.4th at 1136–37.

Granted, it is beyond question that Section 1225 applies to "arriving aliens." Section 1225, however, does not apply *only* to arriving aliens but to all non-admitted aliens present in the country, regardless of when they arrived. Any argument based on how this statute applies in many or even most cases does not tell us anything about what it means in every case, and specifically, nothing about what it means when applied to the facts before the Court today.

19

### 3.    1225 Versus 1226

Third, and finally, Petitioner argues that *all* aliens arrested and placed in removal proceedings are entitled to a bond hearing under Section 1226(a) provided they have not committed certain criminal offenses listed in 8 U.S.C. § 1226(c).  Dkt. 1 at 3, 12–13.  This argument both overlooks the text of Section 1225(b)(2)(A)—stating the applicant for admission "shall be detained" for removal proceedings—and misunderstands the provision's relationship with Section 1226(a).

"[I]t is a commonplace of statutory construction that the specific governs the general[,]" especially when construing comprehensive statutory schemes— like the INA—that are often interspersed with "specific solutions" to "specific problems."  *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992) and *Varity Corp. v. Howe*, 516 U.S. 489, 519 (1996) (Thomas, J., dissenting)).  "The general/specific canon is perhaps most frequently applied to statutes in which a general permission or prohibition is contradicted by a specific prohibition or permission.  To eliminate the contradiction, the specific provision is construed as an exception to the general one."  *RadLAX Gateway Hotel*, 566 U.S. at 645.  "[T]he canon avoids not contradiction but the superfluity of a specific provision that is swallowed by the general one."  *Id.*

Here, the INA contains a general provision—the Attorney General may release most ICE arrestees on bond, 8 U.S.C. § 1226(a)—and a specific provision—every "applicant for admission" must be detained without a bond

hearing, 8 U.S.C. § 1225(b)(2)(A). The specific is the exception to the general, and it applies to Petitioner in this case. *Accord Rodriguez v. Olson*, 814 F. Supp. 3d 945, 958 (N.D. Ill. 2026) (applying general/specific canon to enforce Section 1225(b)(2)(A) over Section 1226(a)); *Ayala v. Harper*, No. 1:26-cv-204-CLM-GMB, 2026 WL 501113, at *8 (N.D. Ala. Feb. 23, 2026) (same).

Applying the general/specific canon here is consistent with the plain text and structure of Section 1225 and 1226. Section 1226(a) is permissive: "[A]n alien *may* be arrested and detained pending a decision on whether the alien is to be removed from the United States." (emphasis added). In other words, the Executive is free to exercise its discretion in how it executes the provisions of Section 1226 provided it does so within the bounds of Section 1225(b)(2)(A)'s clear mandate to detain "applicants for admission" pending removal proceedings "if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted." Enforcing that more specific mandate of Section 1225(b)(2)(A) does not render any of Section 1226 superfluous as to the Petitioner. It harmonizes the two provisions.

\* \* \*

Stepping back to consider the big picture, Petitioner's perspective on the meaning of Section 1225 necessarily implies that aliens who evade inspection and detention at a port of entry enjoy the privilege of a bond hearing while those who submit to inspection upon first arrival do not. As the Fifth Circuit explained, the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) aimed to "reduce th[at] incongruity." *Buenrostro-Mendez*, 166 F.4th at 499; *see*

21

*also Avila*, 170 F.4th at 1135–36; *Torres v. Barr*, 976 F.3d 918, 928 (9th Cir. 2020) (explaining IIRIRA "did away with" the "anomaly whereby immigrants who were attempting to lawfully enter the United States were in a worse position than persons who had crossed the border unlawfully"). Nothing in the text of the statute suggests that the privilege of a bond hearing is based upon the arbitrary standard of avoiding inspection and living in the United States for an unspecified time.

But granting habeas relief on the premise that ICE does not have the statutory right to detain him—despite his non-admitted status—leads to the conclusion that the force of Section 1225(b)(2)(A) arbitrarily dissipates with time. That is plainly not what Congress meant when it wrote "seeking admission" in Section 1225(b)(2)(A) or enacted the bond hearing provision in Section 1226(a). It is also inconsistent with Congress's IIRIRA amendments and encourages the "perverse incentive to enter at an unlawful rather than a lawful location" against which the Supreme Court has warned. *Thuraissigiam*, 591 U.S. at 140 ("Like an alien detained after arriving at a port of entry, an alien like respondent is 'on the threshold.' The rule advocated by respondent and adopted by the Ninth Circuit would undermine the 'sovereign prerogative' of governing admission to this country and create a perverse incentive to enter at an unlawful rather than a lawful location." (citations omitted)).

In sum, Petitioner is subject to mandatory detention pending removal proceedings under the plain terms of Section 1225(b)(2)(A). As such,

Respondents have not violated Section 1226(a) by detaining him without a bond hearing.

**D.    Petitioner's Sixth and Fourteenth Amendment claims are not properly brought in habeas.**

Next, Petitioner argues that his "Sixth Amendment right to effective counsel and Fourteenth Amendment right to due process" were violated when the immigration judge in his removal proceedings did not allow "additional time for [his] counsel to prepare for such a complex case such as his with many witnesses, tens of research articles, and to submit [a] lengthy brief with several hundreds of pages in less than two weeks[' ]time." Dkt. 1 at 13. The Court does not address the merits of these claims because they are not properly raised in a habeas action under 28 U.S.C. § 2241.

The writ of habeas corpus "provide[s] a means of contesting the lawfulness of restraint and securing release." *Thuraissigiam*, 591 U.S. at 117; *see also INS v. St. Cyr,* 533 U.S. 289, 301 (2001) ("At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention."). Petitioner's challenge to the pace at which the immigration judge has conducted his removal proceedings is not an attack on the "fact or length of" his current confinement. *Preiser v. Rodriguez*, 411 U.S. 475, 490 (1973). It is instead a challenge to the procedures employed to determine his removability.

The proper channel for an alien in the "usual removal process" to challenge an immigration judge's removal order is an appeal "to the Board of Immigration Appeals and, if that appeal is unsuccessful, . . . review in a federal court of appeals." *Thuraissigiam*, 591 U.S. at 108 (citing 8 U.S.C. §§ 1229a(c)(5), 1252(a)).

In that process, Petitioner may argue that the immigration judge's quick work of his case warrants vacatur of his removal order and another opportunity to make an asylum claim.  But in this federal habeas action, such relief is unavailable because it "falls outside the scope of the common-law habeas writ." *Thuraissigiam*, 591 U.S. at 118.

Petitioner's claims that the immigration judge violated his Sixth Amendment right to effective counsel and Fourteenth Amendment right to due process are not properly before this habeas court and are accordingly denied.

**E.  Petitioner's current detention does not violate the Fifth Amendment.**

Finally, Petitioner argues his current detention violates the Fifth Amendment's Due Process Clause, but in doing so he simply repackages the claims rejected above.  *See* Dkt. 1 at 12 ("Petitioner alleges that placing him in expedited removal proceedings and not allowing a bond in his removal proceedings is a violation of [the Fifth Amendment], as *Yaj[u]re Hurtado* is in direct contradiction to the plain meaning of 8 U.S.C. § 1225 which affords the Petitioner a credible fear interview, which was never given by an asylum officer.").

The Due Process Clause applies to aliens within the United States "whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).  However, the Supreme Court has held that "[d]etention during removal proceedings is a constitutionally permissible part of that process." *Demore v. Kim,* 538 U.S. 510, 531 (2003).  That holding settles the issue.  And this Court reached the same conclusion in a

previous action that is materially indistinguishable from this case. *Demir*, 2026 WL 706485, at *7–8.

What's more, Petitioner has been detained for approximately three months. Even in a case where removal was "no longer practically attainable," the Supreme Court held detention for up to six months was presumptively constitutional. *Zadvydas*, 533 U.S. at 690. Accordingly, Petitioner's current detention by ICE does not violate his due process rights.

## III.  CONCLUSION

For the foregoing reasons, the Court **DENIES** Petitioner Jaime Francisco Gonzalez-Lopez's Petition for Writ of Habeas Corpus. The Court **DISMISSES** his claims under the Sixth and Fourteenth Amendments **without prejudice** and all other claims **with prejudice**. Dkt. [1]. Final judgment shall issue by separate entry.

**SO ORDERED.**

Date: 5/8/2026

_____

Justin R. Olson
United States District Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email

25